Steven Jay Katzman (SBN 132755)
skatzman@bmkattorneys.com
Ali Matin (SBN 268452)
amatin@bmkattorneys.com
**BIENERT, MILLER & KATZMAN, PLC**
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Tel: (949) 369-3700/Fax: (949) 369-3701

Kyle Kveton (SBN 110805)
kkveton@romalaw.com
**ROBIE & MATTHAI**
A Professional Corporation
500 South Grand Avenue, Suite 1500
Los Angeles, California 90071
Tel: (213) 706-8000/Fax: (213) 706-9913

Attorneys for Grace Baek, Richard Baek,
Baek 153, LLC, and Pacific Commercial Group, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>JOHN OLAF HALVORSON,<br><br>       Debtor. | Case No.  8:15-bk-13556-MW<br><br>Chapter 7<br><br>**BAEK PARTIES' MOTION  FOR CERTIFICATION OF DIRECT APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT PURSUANT TO 28 U.S.C. § 158(d)(2)**<br><br>Submitted to the Hon. Theodor Albert<br><br>[Application for Order Shortening Time Pursuant to LBR 9075-1(b) Filed Concurrently] |

# **Table of Contents**

I.     Introduction.................................................................................................1

II.    Facts necessary to understand the questions presented..........................3

    A.    General background facts. ............................................................4

    B.    Non-exclusive statement of the facts offered in support of recusal....................5

    C.    Proceedings on and relating to the Recusal Motion.......................7

III.   Judge Albert or the District Court should address the Certification Motion. ..............10

IV.    Questions presented for certification. ......................................................11

V.     Relief sought. ..........................................................................................11

VI.    Reasons why direct appeal should be allowed.........................................12

    A.    Section 158(d)(2) generally. ........................................................12

    B.    The Ruling involves two questions of law as to which there are no apparent controlling decisions. ..................................................14

    C.    The Ruling involves a matter of public importance........................16

VII.   Conclusion. ..............................................................................................18

# Table of Authorities

Cases

*Bank of New York Mellon v. Wyatt*,
 867 F.3d 1155 (9th Cir. 2017) ....................................................................................12
*Blausey v. U.S. Trustee*,
 552 F.3d 1124 (9th Cir. 2009) ....................................................................................15
*Bridges v. California*,
 314 U.S. 252 (1941)....................................................................................................17
*Bullard v. Blue Hills Bank*,
 135 S. Ct. 1686 (2015) ................................................................................................12
*In re Alonso*,
 495 B.R. 53 (Bankr. M.D. Fla. 2013) .........................................................................13
*In re Conex Holdings, LLC*,
 534 B.R. 606 (D. Del. 2015)........................................................................................14
*In re Crane*,
 742 F.3d 702 (7th Cir. 2013) ......................................................................................13
*In re Hari Aum, LLC*,
 714 F.3d 274 (5th Cir. 2013) ......................................................................................13
*In re Hundley*,
 603 F.3d 95 (1st Cir. 2010)..........................................................................................13
*In re Millennium Lab Holdings II, LLC*,
 543 B.R. 703 (Bankr. D. Del. 2016) .....................................................................13, 14
*In re Motors Liquidation Co.*,
 755 F.3d 78 (2d Cir. 2014)...........................................................................................13
*In re Nortel Networks, Inc.*,
 737 F.3d 265 (3d Cir. 2013).........................................................................................12
*In re Nortel Networks, Inc.*,
 2016 WL 2899225 n.10 (D. Del. May 17, 2016)..........................................................16
*In re Qimonda AG*,
 470 B.R. 374 (E.D. Va. 2012)................................................................................13, 16
*In re Seven Counties Services, Inc.*,
 2014 WL 4792202 (Bankr. W.D. Ky. Sept. 24, 2014) .................................................13
*In re Tribune Co.*,
 477 B.R. 465 (Bankr. D. Del. 2012) ............................................................................13
*Landmark Communications, Inc. v. Virginia*,
 435 U.S. 829 (1978).....................................................................................................17
*Liteky v. United States*,
 510 U.S. 540 (1994)........................................................................................................1
*Weber v. U.S.*,
 484 F.3d 154 (2d. Cir. 2007).........................................................................................3
*WestLB AG v. Kelley*,
 514 B.R. 287 (D. Minn. 2014) .....................................................................................16

Statutes

28 U.S.C. § 158.......................................................................................3, 12, 14, 16
28 U.S.C. § 455..............................................................................................................1

Rules

Federal Rule of Bankruptcy Procedure 8006.................................................3, 10, 11

The Baek parties[1] hereby submit this *Motion for Certification of Direct Appeal to the United States Court of Appeals for the Ninth Circuit Pursuant to 28 U.S.C § 158(d)(2)* ("Certification Motion") for a decision by Bankruptcy Judge Theodor Albert who acted as the presiding judge with respect to the Baek parties' *Emergency Motion to Recuse Bankruptcy Judge Mark Wallace Under 28 U.S.C. § 455* (the "Recusal Motion").[2]

## I.     Introduction.

Section 455(a) of the Judicial Code provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  The Supreme Court construed that statute in *Liteky v. United States*, 510 U.S. 540 (1994).  In its final ruling denying the Recusal Motion (the "Ruling"), this Court read *Liteky* as creating different standards for recusal under section 455(a) depending upon the source of a judge's alleged partiality:

> [I]f the source of the wrongful predisposition is shown to be extrajudicial and improperly obtained, the bar is somewhat lower.  If the source however is from the proceedings itself, then the bar is higher, and merely because a judge has become ill-disposed toward a party, recusal is not required.[3]

This Court's reading of the majority opinion in *Liteky* comports with the understanding of the four justices who concurred in the decision:

> The Court holds that opinions arising ***during the course of judicial proceedings*** require disqualification under § 455(a) only if they display a deep-seated favoritism or antagonism that would make fair judgment impossible. . . .  The statutory standard, which the Court preserves for allegations of an ***extrajudicial nature***, asks whether there is an appearance of partiality.

*Liteky*, 510 U.S. at 563 (Kennedy, J., concurring) (internal quotations and citations omitted; emphasis added).

As this Court acknowledged both at the hearing on the Recusal Motion and in its Ruling, there appears to be no controlling decision regarding whether a private discussion between a mediating judge

---

[1] The Baek parties include Grace Baek, Richard Baek, Baek 153, LLC, and Pacific Commercial Group, LLC.
[2] *See* Dkt. No. 188, Recusal Motion.
[3] Dkt. No. 232, Ruling at 9.

MOTION FOR CERTIFICATION

and a trial judge about the conduct of a party at a mediation constitutes information obtained by the trial judge from an extrajudicial source.[4]   Likewise, there appears to be no controlling decision regarding whether such a discussion constitutes an *ex parte* or other impermissible communication under Canon 3A(4) of the Code of Conduct for United States Judges.[5]   Again, the answers to those legal questions determine the proper standard for recusal under § 455(a).

In ruling on the Baek parties' Recusal Motion, this Court applied the standard reserved for sources of impartiality that arise during a judicial proceeding, *i.e.*, those that are neither improper nor extrajudicial, thereby triggering the heightened standard for demonstrating partiality:

> Consequently, under the *Liteky* analysis, the recusal motion can only succeed if it is shown that the alleged wrongful bias is so obvious and extreme that fair judgment has become impossible . . . . Movant has not shown any evidence that Judge Wallace has demonstrated such a 'high degree of favoritism or antagonism as to make fair judgment impossible' as described in *Liteky* . . . . Moreover, since this court concludes that information about the alleged 'sabotage' of the mediation did not come from an improper or extrajudicial source, under *Liteky* the bar for recusal is quite high and is not met here.[6]

Section 158(d)(2) of the Judicial Code exists to permit circuit courts of appeals to hear direct interlocutory appeals from bankruptcy courts when a bankruptcy court certifies that an order meets one or more specified conditions.  Two of those conditions are when the order "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the

---

[4] *See* Dkt. No. 232, Ruling at 13–14 ("Further, even if the distinctions between 'substance' of the mediation and its other aspects were not compelling, still no authority is cited for the proposition that these communications (between two judges, one of whom acted as mediator) provoke the same concerns referred to in *Liteky* and other cases discussing the extrajudicial source doctrine."); Dkt. No. 236, 1/9/18 Tr. at 6:16–17 ("I'm not sure, entirely, if it's a fellow sitting judge, where that line gets drawn."); 1/9/18 Tr. at 29:19–21 ("I perfectly agree with you that this is a standard whose parameters are a little hard to define."); 1/9/18 Tr. at 43:10–12 ("I think the single most challenging point for me was to make sense of what the rule is.").

[5] *See* Dkt. No. 232, Ruling at 13 ("[I]t is not clear that Judges Jury and Wallace were not perfectly correct in discussing the events leading to the failure of the mediation.  As the italicized language from the commentary on Canon 3A(4) above suggests, it is not improper for judges to discuss as between themselves 'adjudicative responsibilities.'  The 'adjudication' here would be the question of unclean hands.  Movants argue that a sitting judge acting as a mediator is different, but no authority for this proposition in cited.").

[6] Dkt. No. 232, Ruling at 14, 21; *see also, e.g.*, Dkt. No. 236, 1/9/18 Tr. at 68:5–8 ("I think Judge Bowie came closer to it, somebody who is fully versed in all of the facts of this case would determine that justice was impossible, and I just don't see that here.").

United States" and the order "involves a matter of public importance." 28 U.S.C. § 158(d)(2)(A)(i). Although a circuit court's decision whether to accept an interlocutory appeal under § 158(d)(2) is discretionary, a bankruptcy court's decision whether an order meets one or more of the criteria for certification is not. *See* 28 U.S.C. § 158(d)(2)(B)(i) ("If the bankruptcy court . . . determines that a circumstance specified . . . exists . . . then the bankruptcy court . . . *shall* make the certification[.]") (emphasis added).

As noted above, the Court denied the Baek parties' Recusal Motion because the "information about the alleged 'sabotage' of the mediation did not come from an improper or extrajudicial source" and, therefore, the Baek parties had failed to demonstrate that fair judgment was impossible.[7] The premise supporting the Court's conclusion may, or may not be, correct. Neither this Court nor any of the parties can say, however, because "there is no controlling decision" from either the Ninth Circuit or the United States Supreme Court on that issue. 28 U.S.C. § 158(d)(2)(A)(i). Consequently, certification of the order for interlocutory appeal by this Court is mandatory. Moreover, and as discussed further below, this Court's order also "involves a matter of public importance." *Id.* Again, certification is mandatory.

Of course, it very well could be that, upon the mandated certification, the Ninth Circuit—for whatever reason—will decide not to grant the Baek parties leave to pursue an interlocutory appeal. *See, e.g., Weber v. U.S.*, 484 F.3d 154, 161 (2d. Cir. 2007) ("Congress has explicitly granted us plenary authority to grant or deny leave to file a direct appeal, notwithstanding the presence of one, two, or all three of the threshold conditions"). But it remains that, with respect to the certification process for interlocutory bankruptcy court appeals, section 158(d)(2) lodges the discretionary component of the determination with only the appellate and not the lower court.

## II.    Facts necessary to understand the questions presented.

This Court is well-versed in the facts attendant to the Baek parties' Recusal Motion. Rule 8006(f)(2)(A), however, requires a statement of "facts necessary to understand the question presented" where, as here, certification is upon a party's request. In meeting their obligation to provide that statement, the Baek parties will attempt to be succinct. Nevertheless, for purposes of appeal, they rely upon all the evidence and argument set out in their Recusal Motion (Dkt. No. 188), the November 8, 2017 supplement

---

[7] Dkt. No. 232, Ruling at 21.

(Dkt. No. 198-1), all of their other filings in support of the Recusal Motion, and the arguments of counsel at the hearing this Court held on January 9, 2018.

## A.    General background facts.

As set forth in the Court's Ruling:

> Debtor and Ms. Baek were formerly spouses.  Movants and Debtor have been involved in litigation in various forums, including Oregon civil court, California family court, District Court for the Eastern District of California, and this bankruptcy court.  Debtor also has criminal proceedings pending in Oregon arising from alleged forgery, perjury and identity theft.[8]  Currently at issue before Judge Wallace are two adversary proceedings.[9]  The first, involving fraudulent transfer claims, was removed from District Court and is assigned adversary case number 8:15-01391-MW.  The parties involved in the first adversary proceeding at this point are the Trustee, Movants, Dan Halvorson (Debtor's brother), Jerry Ann Randall (Debtor's mother), and certain Debtor-related entities.  The second is a declaratory relief action filed by Ms. Baek against Debtor and the Trustee wherein she seeks a determination of interests in certain property and is assigned adversary case number 8:15-01454-MW.  Debtor filed a counter-complaint in the second adversary proceeding; the Trustee has been substituted in as the real party in interest.   The parties in both adversary proceedings were ordered to mediation by Judge Wallace pursuant to orders entered March 4, 2016.  The mediation was scheduled for May 27, 2016 before Judge Meredith Jury in the Riverside Division.  About five hours into the mediation Debtor was arrested pursuant to a warrant issued in the Oregon criminal proceeding.  Unsurprisingly, the mediation concluded shortly thereafter in failure.[10]  The arrest triggered a series of hearings on the question of Movants' alleged unclean hands beginning with a status conference on June 22, 2016 and culminating in a trial in early November 2017 on the unclean hands question.[11]

---

[8] These are no longer allegations.  On August 4, 2017, at the conclusion of the criminal trial, the Oregon court found the Debtor guilty on two counts of identity theft and one count of forgery.  Dkt. No. 188, Recusal Motion 8:19–21.

[9] In addition to the two adversary proceedings referenced by the Court, Judge Wallace is presiding over two additional adversary proceedings involving the Baek parties, Adv. Case Nos. 8:15-ap-01382-MW and 8:17-ap-01119-MW.  Thus, the issue of apparent partiality affects four separate adversary proceedings involving the Baek parties and the main bankruptcy case.

[10] The mediation did not conclude after the arrest.  Counsel for the Baek parties and the Trustee continued settlement discussions after the Debtor's arrest and remained at the courthouse for about an hour after the arrest.  *See* Dkt. No. 192, 11/1/17 Trial Tr. 82:16–91:21.

[11] Dkt. No. 232, Ruling at 4–5 (bracketed text added).

**B.      Non-exclusive statement of the facts offered in support of recusal.**

On June 1, 2016, Judge Jury, in open court on another matter, but outside the presence of any of the parties to the mediation, announced that a party to the mediation "came not in good faith at all," "had the debtor arrested at the mediation," which "sabotaged everything," and said the mediation "was worse than a waste of time."[12]

Following the mediation, Judge Wallace was provided with joint status reports indicating that the parties did not reach a settlement but that "attempts to resolve the matters outside of litigation are still ongoing"; the reports did not mention the Debtor's arrest.[13]

On June 22, 2016, Judge Wallace held a joint status conference.  At that conference, and among other things, Judge Wallace made comments indicating a familiarity with what had happened at the mediation; expressed a concern about bad faith conduct; stated that he had considered a potential objection to discussing the matter based on mediation confidentiality; suggested that, if there had been "sabotage," that could result in striking the Baek parties' complaint, entering a judgment of dismissal, and, perhaps equitably subordinating the Baek parties' claim; and stayed the adversary proceedings so the other parties could file a motion to raise the equity issues to which Judge Wallace had alluded.[14]

None of the other parties filed a motion to amend their answers in response to Judge Wallace's invitation.[15]  On October 18, 2016, Judge Wallace entered a *sua sponte* order bifurcating the trial to decide "the unclean hands defense."[16]  Later, in May 2017, Judge Wallace would confirm that he, not any of the other parties, had advanced the defense on his own initiative.[17]

On September 18, 2017, the Trustee and the Baek parties stipulated that they had resolved all issues between them and requested a stay of trial deadlines to execute a settlement agreement; Dan Halvorson and Jerry Ann Randall also signed the stipulation, stating that they did not object to the requested

---

[12] Dkt. No. 188, Recusal Motion 9:18–10:2, Ex. 23 (Hr'g Tr. of *In re Phillip Carver Myers*, 28:8–15, 27:7–14, 28:17–20).
[13] *Id*. at 10:8–13, Exs. 25–26 (Joint Status Reports).
[14] *Id.* at 10:6–14:13 (and citations to the record therein).
[15] *Id.* at 15:7–19 (and citations to the record therein).
[16] *Id.*
[17] *Id.*

continuance.[18] Judge Wallace excused the Trustee from complying with her trial deadlines as to the Baek parties and vice versa, but nevertheless required the Baek parties to comply with those deadlines with respect to other defendants.[19]

On October 6, 2017, the Trustee filed a motion for approval of the sale and settlement agreement between the Trustee and the Baek parties ("Sale and Settlement Motion").[20] That same day, the Baek parties and the Trustee together moved for a continuance of the bifurcated trial set to commence on October 30, 2017.[21] The Sale and Settlement Motion provided that, to "avoid the uncertainties of litigation," the Baek parties agreed with the Trustee to a global settlement where they would pay $350,000 in exchange for resolution of the bifurcated trial's claims and defenses involving the Trustee, as well as resolution of all other matters involving the bankruptcy estate and the Baek parties.[22] In her declaration in support of the Sale and Settlement Motion, the Trustee stated under oath: "I . . . believe the sale and compromise contemplated in the [Sale and Settlement] Motion are fair and reasonable, in the best interest of the Estate and its creditors, and within my sound business judgment" and "[t]he compromise was entered into in good faith and was negotiated at arm's length."[23]

On October 18, 2017, Judge Wallace ordered additional briefing on the court's own motion as to whether the negotiation of the settlement and execution of the agreement violated the stay that had been entered in the adversary proceedings.[24] On October 30, 2017 (the first day of trial) and after the briefs had been submitted, Judge Wallace denied the motion to continue, resulting in the failure of the settlement.[25]

The Baek parties filed their Recusal Motion on October 30, 2017, after Judge Wallace denied the motion for a continuance. Judge Wallace deferred ruling on the recusal request—stating that he would review the motion after trial—after which the trial commenced.[26] During the trial, and among other things, Judge Wallace:

---

[18] *Id.*, Ex. 39.
[19] *Id.* at 16:16–26 (and citations to the record therein).
[20] *Id.* at 17:4–26 (and citations to the record therein).
[21] *Id.*
[22] *Id.*
[23] Dkt. No. 173, Sale and Settlement Motion 25:23–27; Dkt. No. 176 (Trustee's signature page).
[24] Dkt. No. 188, Recusal Motion 17:4–26 (and citations to the record therein).
[25] *Id.* at 17:20–18:11 (and citations to the record therein).
[26] Dkt. No. 198-1, Supplement to Recusal Motion 1:6–9 (and citations to the record therein).

- confirmed that the bifurcated trial on unclean hands was a *sua sponte* matter of the court's;

- disclosed for the first time that "Judge Jury informed me that the mediation was unsuccessful" and that "Mr. Halvorson was arrested at the mediation;"

- decided to review the Recusal Motion and ordered the Baek parties to serve Judge Jury with the motion; and

- asserted that the Baek parties, among other things, had engaged in "a long train of questionable litigation conduct" that "some might argue . . ., in the aggregate, constitutes bad faith and unethical behavior," and that the Baek parties' counsel had violated the stay order by executing the settlement agreement with the Trustee. Even though the Trustee filed the Sale and Settlement Motion, and signed the underlying settlement agreement, Judge Wallace did not accuse the Trustee or her counsel of violating any stay order. [27]

The first part of the bifurcated trial, on the unclean hands affirmative defense Judge Wallace raised, concluded on November 3, 2017. A decision has yet to be issued.

### C.    Proceedings on and relating to the Recusal Motion.

On November 14, 2017, Judge Wallace transferred the Recusal Motion to Judge Clarkson, another judge of the United States Bankruptcy Court for the Central District of California.[28] Judge Wallace previously acknowledged making contact with Judge Clarkson regarding the adversary proceedings.[29]

On November 17, 2017, the Baek parties filed motions to withdraw the bankruptcy court reference with the District Court,[30] and, on November 20, 2017, moved the District Court for a stay of proceedings.[31] On November 22, the District Court ruled that "[t]he proper course should have been to assign the Baek Parties' recusal motions to another Bankruptcy Judge on a random basis," stayed the motions for withdrawal, and stayed "all further proceedings before Judge Wallace in adversary proceedings until the motions to recuse have been decided."[32]

---

[27] *See id*. at 1:13–3:12, 11:3–15.
[28] Dkt. No. 209 (Order Transferring Recusal Motion).
[29] Dkt. No. 188, Recusal Motion, Ex. 48 (3/13/17 Tr. 4:9–13).
[30] *See* Case Nos. 8:17-cv-2024 and 8:17-cv-2025; Dkt. Nos. 1 and 1, respectively.
[31] Case Nos. 8:17-cv-2024 and 8:17-cv-2025, Dkt. Nos. 6 and 8, respectively, *Ex Parte* Applications.
[32] Case Nos. 8:17-cv-2024 and 8:17-cv-2025, Dkt. Nos. 13 and 13, respectively, Stay Orders at 1–2.

Thereafter, the Recusal Motion was assigned to the Hon. Theodor Albert, and, on January 4, 2018, the Court issued the Ruling denying the motion. In the Ruling, which is both quoted from and discussed later in this motion, the Court notes that the Baek parties had requested "Judge Wallace disclose all of his *ex parte* communications with Judge Jury and give Movants a further opportunity to respond."[33] The Court did not order the requested disclosure.[34]

Also in its Ruling, for purposes of deciding whether a communication derives from an extrajudicial or other improper source, the Court drew a "distinction between procedural aspects of a conference, which are ordinarily not confidential, vs. the substance of the negotiations, i.e. the give and take in settlement discussions going to the perceived strength or weakness of a party's case."[35] In light of that distinction, the Court concluded that "the discovery [Judge Wallace had allowed in advance of the bifurcated trial] regarding the alleged obstruction and unclean hands issues were on safe and discoverable grounds."[36]

Consistent with that conclusion, the Court also expressed doubt that any communications between Judges Jury and Wallace about the parties' conduct during the mediation would violate either Rule 408, Canon 3A(4) of the Code of Conduct for United States Judges, or General Order No. 95-01, ¶ 8.10(b) of the Bankruptcy Court for the Central District of California, so long as the discussions did not reach the substance of the negotiations: "it is not clear that Judges Jury and Wallace were not perfectly correct in discussing the events leading to the failure of the mediation."[37] The Court added:

> *it is not improper for judges to discuss as between themselves 'adjudicative responsibilities.' The 'adjudication' here would be the question of unclean hands*. Movants argue that a sitting judge acting as a mediator is different, but no authority for this proposition is cited. But in the end this probably turns more on the question of whether the 'substance' of the mediation

---

[33] Dkt. No. 232, Ruling at 6; *see also* Ruling at 12 ("Movants have requested this disclosure.").

[34] *Id.* at 12 (suggesting "it would seem the disclosure has already been made" and stating that Judge Wallace's comments that "Judge Jury informed me [on an *ex parte* basis] that the mediation was unsuccessful" and "that Mr. Halvorson was arrested at the mediation" was sufficient, and there is not "any reason to believe that there was more to the communications between Judge Wallace and Judge Jury"); *see also* 1/9/18 Tr. at 30:19-23 (to same effect).

[35] *Id.* at 10.

[36] *Id.*; *see also id.* at 11 ("Thus, proving bad faith 'unclean hands' as an affirmative defense, or offense against the court, would fall within the accepted category [from introduction as evidence under Rule 408 of the Evidence Code] as it has nothing to do with the viability of the claim.").

[37] *Id.* at 13; *see also, generally*, *id.* at 9–13.

(discussed above as more properly defined as the settlement of claims portion) was discussed as opposed to the administrative aspects. There is absolutely no evidence this occurred. ***The alleged offensive conduct in sabotaging the mediation would fall within the administrative aspects of the conference and would have been appropriate to discuss in assisting Judge Wallace's adjudicative responsibility on the question of unclean hands***. Further, even if the distinctions between 'substance' of the mediation and its other aspects were not compelling, still no authority is cited for the proposition that these communications (between two judges, one of whom acted as mediator) provoke the same concerns referred to in *Liteky* [discussed later in this motion] and other cases discussing the extrajudicial source doctrine.[38]

Finally, the Ruling concluded by stating that, "since this court concludes that ***information about the alleged 'sabotage' of the mediation*** did not come from an improper or extrajudicial source, under *Liteky* the bar for recusal is quite high and is not met here."[39]

A hearing on the Recusal Motion was held on January 9, 2018. At the hearing, the Court continued to express concerns about the line between proper and improper *ex parte* communications between a merits judge and a judge acting as mediator. For example, when provided with a hypothetical in which a mediator judge witnessed an assault and then communicated privately about what had occurred with the judge assigned to hear the assault charge, the Court stated: "I'm not sure, entirely, if it's a fellow sitting judge, where that line gets drawn."[40] Moreover, the Court acknowledged that, with respect to the content of the private conversation between Judges Jury and Wallace about the mediation, "I don't know what they – I wasn't a part of the conversation, so I don't know what they [said]."[41]

Also, when counsel for the Baek parties again noted that they had asked for disclosure, the Court stated: "I don't know that disclosure necessarily is the point upon which any of this turns. I just mentioned

---

[38] *Id*. at 13–14 (emphasis added).

[39] *Id.* at 21 (emphasis added).

[40] Dkt. No. 236, 1/9/18 Tr. at 6:16-17. *See also id*. at 29:19–21 ("I perfectly agree with you that this is a standard whose parameters are a little hard to define."); *id*. at 31:1–5 ("but I am prepared to tell you that I don't know that a judge talking about a mediation failing because the Debtor was arrested goes to the substance of the mediation"); *id.* at 43:10–12 ("I think the single most challenging point for me was to make sense of what the rule is.").

[41] *Id*. at 9:17-18; *see also id*. at 30:25–31:1 ("I don't know what they were saying, because I wasn't on the conversation"); *id.* at 31:25-32:3 ("THE COURT: I don't know it, but – MR. KATZMAN: No, you don't. You don't. THE COURT:  -- you don't know it either. MR. KATZMAN: No, that's right."). Nor do the Baek parties know, or have any way of knowing, absent mandated disclosure, whether there was only one or multiple conversations between Judge Jury and Judge Wallace about the mediation.

MOTION FOR CERTIFICATION

it as background in the tentative, that you have gone – I don't think you have laid a foundation to my satisfaction that *something improper has occurred*."[42]    Finally, the Court's understanding about the propriety of *ex parte* communications between sitting judges was both addressed and confirmed in the following colloquies with opposing counsel:

> THE COURT: So is it possible to say, then, that judges, as amongst themselves, have a privilege to talk about things that maybe lay people who are also witnesses may not have the same privilege?  Is that where we're going?
>
> MR. FORSYTHE:  Ultimately, your Honor, if it does not prevent fair judgment from happening, then yes, and that's what I think the question is here. . . .
>
> THE COURT:  Mr. Katzman strives for a distinction between judges talking with each other, as colleagues do, and where a judge is also a percipient witness.  Is there a different standard that is called into play because of that?
>
> MR. BOWIE:  None that I've seen in any of the cases that I read looking at this question . . . .
>
> THE COURT:  Before you go on to your next point, Judge, do I gather correctly from that that your view is that the mediation was not extrajudicial, in fact, it's part of what Judge Wallace ordered in this case; therefore, to have all that elaborate discussion about extrajudicial sources is wrong?
>
> MR. BOWIE:  Well, I think that's true . . . .[43]

The proposed order denying the Recusal Motion states that "[t]he Motion is denied for the reasons set forth on the record and in the Court's Tentative Ruling on the Motion, which is adopted as the Court's final ruling."[44]

### III.    Judge Albert or the District Court should address the Certification Motion.

Federal Rule of Bankruptcy Procedure ("FRBP") 8006(b) provides that "[t]he certification must be filed with the clerk of the court where the matter is pending" and, "[f]or purposes of this rule, a matter remains pending in the bankruptcy court for 30 days after the effective date" of the Baek parties' notice of appeal to "give the bankruptcy judge, who will be familiar with the matter being appealed, an opportunity

---

[42] *Id.* at 33:22–34:1 (emphasis added).
[43] *Id.* at 47:24–48:5, 53:10–15, and 56:24–57:5.
[44] Dkt. No. 234.

MOTION FOR CERTIFICATION

to decide whether certification for direct review is appropriate," *id.* (Advisory Committee Notes to 2014 Amendments, subdivision (b)).  Thereafter, the matter will be "pending in the district court . . . ."  FRBP. 8006(b).

The Certification Motion seeks certification of Judge Albert's order and underlying eighteen-page Ruling denying the Recusal Motion.  The Baek parties submit that Judge Albert is the appropriate judge to determine whether certification of his order should be granted in the first instance, particularly given Judge Albert's comments regarding the difficulty in rendering his decision on the Recusal Motion, as set forth both above and below.  In the event that the Certification Motion is not heard by Judge Albert within 30 days, however, the Certification Motion should be addressed by District Judge James Selna, consistent with FRBP 8006(b).

## IV.    Questions presented for certification.

First Question:  When (1) a mediating judge and a trial judge privately discuss a mediation; (2) independent evidence supports the inference that during the discussion, the mediating judge asserts that one of the parties sabotaged the mediation in bad faith by causing the debtor's arrest; and (3) the trial judge later seeks to adjudicate whether the asserted misconduct constituted unclean hands precluding relief on that party's claims, has the trial judge obtained information from an "extrajudicial source" for purposes of assessing recusal under 28 U.S.C. § 455(a)?

Second Question:  When (1) a mediating judge and a trial judge privately discuss a mediation; (2) independent evidence supports the inference that during the discussion, the mediating judge asserts that one of the parties sabotaged the mediation in bad faith by causing the debtor's arrest; and (3) the trial judge later seeks to adjudicate whether the asserted misconduct constituted unclean hands precluding relief on that party's claims, was the discussion an "*ex parte* communication[ ]" or "other communication[ ] concerning a pending or impending matter . . . outside the presence of the parties or their lawyers" under Canon 3A(4) of the Code of Conduct for United States Judges?

## V.    Relief sought.

The Baek parties respectfully request that the Court certify their appeal of this Court's order denying the Baek parties' Recusal Motion for direct appeal to the United States Court of Appeals for the Ninth Circuit pursuant to 28 U.S.C. § 158(d)(2).  If the Certification Motion is granted and the Ninth Circuit

allows a direct appeal to proceed, the Baek parties will ask the Ninth Circuit to reverse this Court's order

denying the Recusal Motion.

**VI.    Reasons why direct appeal should be allowed.**

> **A.    Section 158(d)(2) generally.**

As recently explained by the Ninth Circuit:

> With the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Congress elaborated the certification procedure in light of bankruptcy's two-tiered appellate structure.  Section 158(d)(2)(A) confers discretionary jurisdiction on the circuit courts if the bankruptcy court, district court, or bankruptcy appellate panel, or all the appellants and appellees acting jointly, 'certify that—(i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance; (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken.' 28 U.S.C. § 158(d)(2)(A).  When any of those criteria is met, we may exercise our discretion to take jurisdiction, as we have previously done.

*Bank of New York Mellon v. Wyatt*, 867 F.3d 1155, 1159 (9th Cir. 2017) (citation omitted).  *See also, e.g., Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1696 (2015) ("§ 158(d)(2) permits certification when any one of several such factors exists, a distinction that allows a broader range of interlocutory decisions to make their way to the courts of appeals.  While discretionary review mechanisms such as these do not provide relief in every case, they serve as useful safety valves for promptly correcting serious errors and addressing important legal questions.") (internal quotations and citations omitted).[45]

Also, it is no moment for purposes of certification that the issues involved do not pertain specifically to the Bankruptcy Code.  Nor has the source from which the legal question has arisen been deemed an impediment by the circuit courts of appeals in deciding whether to accept a certified appeal on interlocutory review.  *See, e.g., In re Nortel Networks, Inc.*, 737 F.3d 265, 269-70 (3d Cir. 2013) (deciding whether

---

[45] The Supreme Court went even further, expressing its "expectation that lower courts will certify and accept interlocutory appeals . . . in appropriate cases."  *Bullard*, 135 S. Ct. at 1696.  That expectation accords with Congress' grant of *sua sponte* authority for a lower court to issue the certification – "the bankruptcy court . . . acting on its own motion", *see* 28 U.S.C. § 158(d)(2)(A), which is a route to Ninth Circuit consideration of a direct appeal available to the Court in this case without the need for additional argument from the parties.

parties agreed to arbitrate under New York law); *In re Hari Aum, LLC*, 714 F.3d 274, 280 (5th Cir. 2013) (construing provision of Louisiana Civil Code); *In re Crane*, 742 F.3d 702, 706 (7th Cir. 2013) ("The question before us is therefore at bottom a question of Illinois state law.").

Indeed, sometimes after allowing an interlocutory bankruptcy appeal, the circuit court has decided to certify questions of law to state courts. *See, e.g., In re Motors Liquidation Co.*, 755 F.3d 78, 86 (2d Cir. 2014) (certifying to Delaware Supreme Court question about Article 9 of the Uniform Commercial Code); *In re Hundley*, 603 F.3d 95, 99 (1st Cir. 2010) (certifying to Supreme Judicial Court of Massachusetts questions concerning property interests in tax refunds).

Finally, "[u]nlike the bankruptcy court or district court, ***which must certify an appeal if one of the statutory conditions is met***, [ ] the court of appeals exercises discretion in deciding whether to authorize the direct appeal." *In re Qimonda AG*, 470 B.R. 374, 383 (E.D. Va. 2012) (footnote omitted; emphasis added); *see also, e.g., In re Millennium Lab Holdings II, LLC*, 543 B.R. 703, 717 (Bankr. D. Del. 2016) ("While I am cognizant of the burden placed on the Third Circuit by my certification of this appeal, the statute gives the appellate court, not the lower court, the gatekeeping burden when the order on appeal meets the statutory requisite."). The text and legislative history of section 158(d)(2) makes the mandatory nature of certification clear. *See In re Qimonda AG*, 470 B.R. at 383 n. 9 (noting use of "shall make the certification" in 28 U.S.C. § 158(d)(2)(B) and citing H.R. Rep. No. 109–31(1), at 148, 2005 U.S.C.C.A.N. 88 at 206 ("Such certification must be issued by the lower court if . . . one or more of certain specified standards are met[.]")).[46]

As discussed below, the Court's order on denying the Baek parties' Recusal Motion unquestionably meets the first specified standard (no controlling decision) and almost certainly triggers the second (a

---

[46] *See also, e.g., In re Alonso*, 495 B.R. 53, 55 (Bankr. M.D. Fla. 2013) ("When a party files a request for certification of direct appeal in the bankruptcy court, the certification is mandatory if the bankruptcy court finds that one of the circumstances set forth in 28 U.S.C. § 158(d)(2)(A)(i)-(iii) exists.") (footnote omitted). *In re Tribune Co.*, 477 B.R. 465, 470 (Bankr. D. Del. 2012) ("Section 158(d)(2)(B) provides that certification to the court of appeals is *mandatory* if the bankruptcy court determines that circumstances specified in (i), (ii) or (iii) of subparagraph (A) exists.") (emphasis in original); *In re Seven Counties Services, Inc.*, 2014 WL 4792202 *8 (Bankr. W.D. Ky. Sept. 24, 2014) ("[T]he Court must certify that these appeals involve a matter of public importance. The Court however, does not recommend that the Court of Appeals for the Sixth Circuit authorize the direct appeals[.]").

matter of public importance).  28 U.S.C. § 158(d)(2)(A)(i).[47]  Whether for one or two reasons, this Court is obligated to certify the Baek parties request.

**B.      The Ruling involves two questions of law as to which there are no apparent controlling decisions.**

For purposes of subpart (i) of § 158(d)(2)(A), a "controlling decision" "is one that admits of no ambiguity in resolving the issue."  *In re Conex Holdings, LLC*, 534 B.R. 606, 611 (D. Del. 2015).  As set out above, this Court's Ruling together with its statements at the January 9 hearing make clear that the Court denied the Baek parties' motion by applying the "make fair judgment impossible" standard of recusal under section 455.  But the Court also noted that the "make fair judgment impossible" standard applies only when the source of the alleged judicial bias does not come from an "extrajudicial source."

The Baek parties claimed that private discussions between the mediating judge and the trial judge about alleged mediation misconduct, when the trial judge later became responsible for determining whether misconduct occurred and, if so, whether to preclude a party from proceeding on its claims, constitute both information from an extrajudicial source under *Liteky* and *ex parte* or otherwise improper communications under the Code of Conduct.  This Court disagreed.

There was no disagreement, however, either orally or in writing, that the Court's decisions (1) to apply the "make fair judgment impossible" standard and (2) that the communications were proper under the Code of Conduct somehow were mandated by an opinion from either the Ninth Circuit or the Supreme Court, as it appears no such opinions exist.  Indeed, the Court made that point repeatedly:

- "I'm not sure, entirely, if it's a fellow sitting judge, where that line gets drawn."[48]

---

[47] While § 158(d)(2)(A) "contains three subparts, there are actually four disjunctive criteria as subpart (i) sets forth two separate benchmarks for certification."  *In re Millennium Lab Holdings II, LLC*, 543 B.R. 703, 708 (Bankr. D. Del. 2016).  Here, the third benchmark—the presence of "a question of law requiring resolution of conflicting decisions," set out in subpart (ii)—plainly is not implicated because there appear to be *no* decisions (from the Ninth Circuit, the Supreme Court, or any other court) as to which recusal standard applies when the bias alleged stems from private communications between a judge mediator and merits judge about alleged mediation misconduct.  Moreover, while the Baek parties believe that eliminating at an early stage of the proceedings (almost nothing has occurred in the adversary proceedings except the bifurcated trial on unclean hands) any issue with respect to whether recusal is mandated "may materially advance the progress of the case," 28 U.S.C. § 158(d)(2)(A)(iii), they are not seeking certification on that basis.

[48] Dkt. No. 236, 1/9/18 Tr. at 6:16-17.

- "I perfectly agree with you that this is a standard whose parameters are a little hard to define."[49]

- "Well, you know, this was obviously a difficult case for me, for a lot of reasons.  I think the single most challenging point for me was to make sense of what the rule is."[50]

- "Further, even if the distinctions between 'substance' of the mediation and its other aspects were not compelling, still no authority is cited for the proposition that these communications (between two judges, one of whom acted as mediator) provoke the same concerns referred to in *Liteky* and other cases discussing the extrajudicial source doctrine."[51]

- "[I]t is not clear that Judges Jury and Wallace were not perfectly correct in discussing the events leading to the failure of the mediation.  As the italicized language from the commentary on Canon 3A(4) above suggests, it is not improper for judges to discuss as between themselves 'adjudicative responsibilities.'  The 'adjudication' here would be the question of unclean hands. Movants argue that a sitting judge acting as a mediator is different, but no authority for this proposition in cited."[52]

- "I don't think the standard, as Mr. Katzman suggested, is mere appearance . . . .  No.  I think Judge Bowie came closer to it, somebody who is fully versed in all of the facts of this case would determine that justice was impossible . . . ."[53]

Simply stated, neither the parties nor this Court could find any Ninth Circuit or Supreme Court decision that even attempts to answer, let alone does so in a way that "admits of no ambiguity," the questions the Baek parties have identified.  The best the opposing parties could come forward with—for the first time at the hearing—were a couple of treatises.[54]  But even if those treatises answered the questions—plainly they do not—the academic works are neither decisions nor controlling.  *See, e.g., Blausey v. U.S. Trustee*, 552 F.3d 1124, 1130 (9th Cir. 2009) ("Because no Ninth Circuit or Supreme Court case addresses whether the word 'income' in 'current monthly income' should be interpreted to mean 'gross income' as defined in the Internal Revenue Code, the condition for certification in 28 U.S.C. § 158(d)(2)(A)(I) is met.").

Finally, the answers to the questions this motion has identified are nothing less than fundamental to the Court's decision on the Baek parties' Recusal Motion, because—as this Court has noted—their

---

[49] *Id.* at 29:19-21.
[50] *Id.* at 43:9-12.
[51] Dkt. No. 232, Ruling at 13–14.
[52] *Id.* at 13.
[53] Dkt. No. 236, 1/9/18 Tr. at 68:3–8.
[54] Dkt. No. 236, 1/9/18 Tr. at 52–54.

resolution determines the standard for judging recusal.   For all of those reasons, that is, because subpart (i) of § 158(d)(2)(A) has been triggered, the Court is obligated to certify its order denying the Baek parties' Recusal Motion for direct appeal to the Ninth Circuit.

### C.    The Ruling involves a matter of public importance.

As noted above, subpart (i) of § 158(d)(2)(A) sets out two separate benchmarks for certification. The first—no controlling decision—has been established above.   Accordingly, there is no need for the Court to proceed further in its certification analysis because one is enough.   *In re Nortel Networks, Inc.*, 2016 WL 2899225 *4 n.10 (D. Del. May 17, 2016) (declining to address third asserted basis to certify appeal "as it has concluded there are at least two other bases for certification").[55]   However, should the Court choose or feel compelled to continue through the statute, the second benchmark also is present: "the . . . order . . . involves a matter of public importance."  28 U.S.C. § 158(d)(2)(A)(i).

> A case may involve a matter of public importance if it transcends the litigants and involves a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case. . . .   Alternatively, a case may involve a matter of public importance if it has important practical ramifications.

*WestLB AG v. Kelley*, 514 B.R. 287, 293 (D. Minn. 2014) (internal quotations, citations, and brackets omitted).   As an example, the case could "impact a large number of jobs or other vital interests in a community."  *In re Qimonda AG*, 470 B.R. 374, 387 (E.D. Va. 2012); *see also id.* at 386 ("the language of the statute and weight of authority both persuasively lead to the conclusion that an order can involve a matter of public importance even where it does not involve a question of law that is itself a matter of public importance").

In those regards—transcending the litigants, advancing the cause of jurisprudence, important practical ramifications, interests vital to the community—there can be no doubt but that an impartial judge—whether sitting under Article I or Article III—presents a matter of public importance:

> The administration of justice by an impartial judiciary has been basic to our conception of freedom ever since Magna Carta.  It is the concern not merely of the immediate litigants.  Its assurance is everyone's concern, and it is

---

[55] Similarly, "the presence of a legal question of first impression requires certification even if other non-qualifying questions are also at issue."  *In re Qimonda AG*, 470 B.R. 374, 385 n. 13.

protected by the liberty guaranteed by the Fourteenth Amendment. That is why this Court has outlawed mob domination of a courtroom, . . . mental coercion of a defendant, . . . a judicial system which does not provide disinterested judges, . . . and discriminatory selection of jurors[.]

*Bridges v. California*, 314 U.S. 252, 282-283 (1941) (Frankfurter, J., dissenting; citations omitted); *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 839 (1978) ("The operations of the courts and the judicial conduct of judges are matters of utmost public concern.").

Moreover, the Baek parties' Recusal Motion was not run-of-the-mill. It presented serious, fundamental questions: "THE COURT: . . . I hope you'll realize that this is not an easy case. It goes to the very heart of what it means to be a judge . . . ."[56] Nor was the context in which the recusal question arose—court-referred mediation—an isolated one. In the Central District of California alone, 2,932 cases were referred to either a magistrate judge, court panel, or private party for mediation.[57] Moreover, 2,360 and 2,426 such cases were referred to mediation in 2015[58] and 2014,[59] respectively. Likewise, since the inception of the Bankruptcy Mediation Program, judges have assigned 5,655 matters to mediation.[60] Whether a judge sitting as a mediator who, during the mediation becomes a percipient witness to potential mediation conduct, is then free to discuss that conduct privately with the trial judge who will be determining whether the privately disclosed misconduct will preclude a party from proceeding on its merit claims presents a matter of the utmost public importance. Again, certification of this Court's order denying the Baek parties' Recusal Motion is mandated.

---

[56] Dkt. No. 236, 1/9/18 Tr. at 67:20–23.
[57] https://www.cacd.uscourts.gov/sites/default/files/documents/ADR_Program_Report_2016.pdf.
[58] http://www.cacd.uscourts.gov/sites/default/files/ADR_Program_Report_2015.pdf.
[59] http://www.cacd.uscourts.gov/sites/default/files/ADR_Program_Report_2014.pdf.
[60] http://www.cacb.uscourts.gov/sites/cacb/files/documents/publications/Annual_Report_2016.pdf.

**VII.    Conclusion.**

For all the foregoing reasons, the Baek parties respectfully request that the Court promptly certify their appeal of this Court's order denying the Recusal Motion for direct appeal to the United States Court of Appeals for the Ninth Circuit pursuant to 28 U.S.C. § 158(d)(2).[61]

Dated:  January 22, 2018                    BIENERT MILLER & KATZMAN, PLC

                                            _____
                                            Steven J. Katzman
                                            Ali Matin
                                            **Attorneys for Grace Baek, Richard Baek, Baek 153, LLC,**
                                            **and Pacific Commercial Group, LLC**

---

[61] The Baek parties have *ex parte* applications pending before District Judge James Selna, which seek to extend stays the District Court issued with respect to adversary proceedings pending before Judge Wallace. Those stays are set to expire upon entry of the order denying the Recusal Motion.  In the event (i) those *ex parte* applications are not granted or (ii) the Court enters an order denying the Recusal Motion before the District Court stays are extended, the Baek parties will seek an emergency stay with this Court, in part, to delay the effectiveness of the order denying the Recusal Motion.

18